Melissa Liebman on behalf of the United States. I'd like to reserve a few minutes for rebuttal time. A few minutes? It's hard to know when to turn on that yellow light with a few minutes. Okay, two minutes. Okay. Thank you. The regulation at issue is a permissible construction of all of the statutory terms of 8 U.S.C. 1255A for three different reasons. First, it does not waive any statutory requirement or give any statutory term two different meanings. Second, the statute grants discretion to the agency three separate times and the regulation is reasonable in light of that discretion and in light of the agency's and Congress's concerns about fraud in the religious worker visa program. Congress intended immediately available to refer only to whether a visa number is current or available when the adjustment of status application is filed. Then why didn't they say that? Immediately available seems to be fairly precise. There, I'm not sure if this court had the opportunity to review the government's I looked, we got it this morning and I glanced at it. But again, you're, as Justice Scalia is fond of saying, you're asking us to look at the legislative discussions as opposed to the clear language of the statute, I think, aren't you? Yes, Your Honor. And the agency, since 1976, when Congress amended the statute from the date an application is approved to the date an application is filed, United States Immigration Services and formerly the or a gap in 1255A to allow for both concurrent and non-concurrent filing. The statute in this, at issue I don't think that's a question, is it? Of course they're allowed two kinds, but one of them has to be immediately, doesn't it? That's correct, Your Honor. And the agency generally close relatives like wife, child, parent of an American citizen. Well, Your Honor, the agency always requires a visa to be immediately available. An agency interprets that language to mean that a visa must be current. And whether a visa is current depends on the determination based on the visa bulletin. For each particular month, a visa bulletin comes out and dependent upon the type of visa category, a visa may or may not be current for a particular category. For immediate relatives, the group that you just referred to, Your Honor, immediate relative visas are always current. Religious worker visas are generally current except for at the end of the fiscal year, sometimes the visas run out. Or in the past, Congress has ended the program and until the program is renewed, the visas are not available. For EB1 priority workers, as of the July 2001, I'm sorry, the July 2010 visa bulletin, priority workers are current as of July 2001. That means that if they filed their visa petition on or before July 2001, then they are immediately available this month. For EB3 skilled workers and EB2 workers, those, the currentness or the immediate availability of those groups goes, dates to the depending on where they come from if you look at the visa bulletin for this month. Is it true then of the religious workers? Well, the religious worker visas are current this month. There is no question as to whether or not they are currently immediately available. So the regulation Why can't they file? Well, the regulation in the agency's discretion requires that for some groups, a visa petition must be approved before an adjustment of status application may be filed. And the agency requires that a visa petition be approved for some groups, including religious workers. They're not the only category of visa applicants that are required to have an approved visa petition before an adjustment of status application may be filed. Other groups that are required by the agency to have an approved visa petition include the following categories. Broadcast employees, former employees of the United States government abroad, former employees of the Panama Canal Company, former United States government employees in the Panama Canal Zone, special immigrant interpreters who are nationals of Iran or Afghanistan, retired employees of international organizations, certain Iraqis employed by the United States government, retired NATO civilian employees, United States Armed Forces personnel, and the entire EB-4 category or employment creation in visa vested, I'm sorry, in visa, investor visas. Sorry, Your Honor. So the agency always requires that immediate, that a visa number be immediately available regardless of whether the category is allowed to concurrently file or not. So for example, the EB-1 priority workers whose visas this month are current as of July 2001. Until the visa bulletin showed July 2001, EB-1 workers, although the regulation allows for concurrent filing for that group, until the visa bulletin shows 2001, those priority workers were not allowed to file their adjustment of status applications unless their petitions were filed on or before July 2001. So if you file your petition in July 2001, you had to wait almost 10 years before you could file your adjustment of status application. And does the priority date in that example, is it fixed by when the petition is filed for those folks? Yes, Your Honor. And it's also fixed for the religious workers when the petition is filed, right? Yes, Your Honor. So no matter how you slice it, the priority date is established or you get into the queue depending upon when your petition is filed. In order to file an adjustment of status application, the agency always requires at a minimum that a visa be immediately available. I know that. And then once, for both categories, for all categories of people, once the visa petition is approved, the priority date, that is the date in which you get into the queue, is fixed as of the time you filed the petition. And that's true across the board, isn't it? Across the board, an application for adjustment of status may be filed if the date that the underlying petition was filed is immediately available for that date. And the agency requires, in its discretion, for some categories, it has this additional requirement that a visa petition also be approved before the application may be filed. And if you look at the language of the statute, it ---- I'm sorry. I'm slow. It seems to me that Judge Reimer's question could have been answered with a yes or no. Can it be? I thought under the regs that the priority date ---- this isn't a trick question. I mean, so don't relax. I mean, I thought that the priority date for all categories was fixed by the regulations as of the time that the petition was filed. I may have misread it. That's why I'm just simply asking a clarifying question. Yes, Your Honor. The priority date is always set by the date that the underlying petition is filed. And it's either a visa ---- I'm sorry. It's either a visa petition, like an I-130 or an I-140, or for other categories, it's a labor cert petition. Right. And then the application in all cases, across all categories, cannot be filed until a visa is immediately available, and that is defined by regulation as meaning when it shows up current on the bulletin. Is that right? That's correct, Your Honor. Okay. So ---- So everybody is treated the same in that respect. Yes, Your Honor. And the only difference is one of when the petition is processed for approval. Is that right? Well, the only difference is dependent on the visa category when an adjustment of status application may be filed with the agency. And it's different. The agency, in its discretion, set out and started in 1976 by allowing both concurrent and non-concurrent filing. And then in 1991, it said, we're going to allow concurrent filing only for immediate family and preferred family. And then there's ---- Okay. Here's what I'm focusing in on, is is there any difference in treatment between the religious workers and non-religious workers categories except for petition for a visa is processed? In the one case, the petition has to be processed and approved before an application can be filed. In the other, it can be filed concurrently. But does it make any difference except for the timing of when the petition is approved if the date, the priority date, is always the same, and that's when the petition is filed, and if the application can only be accepted for filing when a visa is immediately available as defined, which is current in the bulletin? Well, the answer is yes. They're all treated the same. But I think that there might be an issue in terms of the terminology, and the agency is very specific that the first step is the petition, and then the adjustment of status application is called an application. So there's a petition and there's an application. That's why I thought I was being careful. Okay. I'm sorry. I'm just very careful about that because the agency requires us to be. The sugar in this is that if you can file it simultaneously, you automatically get to stay even past the time until the filing is resolved. Is that correct? So that the religious, even though they have three to five years, when they're up, they're up, and they've got to get out, while the other two categories, if they've been able to file for a change of status, they get to stay even if it's up, right? Well, Your Honor, there's actually, it's not that clear because for some categories that are allowed to concurrently file, there are wait times of upwards of 20 years. So those individuals cannot file their application for adjustment of status until the visa number becomes current. So they may have filed their petition 20 years before their adjustment application can be filed,  For the religious workers where the visa numbers are always current, the visa petition has to be approved first. That's a group where if you're looking at somebody who has come here first on a non-immigrant religious worker visa, which has a maximum time frame of five years, you originally come in for two years, and then you can extend for up to three. You can only file the visa petition if you've shown that you've been working for an organization for two years. So any time after that two years, you can file your visa petition, and with current processing times of about five months, if an individual and organization plans accordingly, they should not have a problem getting to the end of the five-year period before the visa petition is approved. So you're claiming no harm, no foul? The government believes that any delays may be the fault of the individual or poor planning, because in addition to that five years, the statute also allows an additional 180 days of time period that the person can stay after the five years have run out without endangering their ability to obtain adjustment of status. Are you saying no harm, no foul? Yes, Your Honor. The ball is in your court the whole time? Yes, Your Honor. Is that correct? Have I stated that correctly? That the ball is in the court of the person who has to file, yes. And the statute is clear that there is a five-year period of time that they can stay. Once they leave, they can still be eligible for adjustment of status, but then they have to file with the consulate and wait until the petition is approved, and many individuals do come in that way. It's not that more people can come in that way than have in the past. They haven't used up all 5,000 visas in the past five or six years, so more folks can come in that way than have in the past, and that is an option. Okay. So if there is a difference having to do with a stay, which arises when the application is accepted for filing, does that in your view make the regulation somehow an unreasonable construction of the statute? No, Your Honor. And why not? Because the statute clearly vests discretion with the agency. There are actually three grants of discretion within the statute. The statute merely provides for a baseline of what must happen, and the agency is given broad discretion to determine the way that these applications will be processed according to the statutes and regulations that govern. Sam, over time. Thank you. I'll give you some rebuttal on this particular matter. Good morning, Your Honors. My name is Robert Powell. I'm appearing here on behalf of the plaintiffs, and with me is Robert Gibbs. At issue in this case really is whether CIS can refuse to accept applications from people who are statutorily eligible. The religious workers in this case are statutorily eligible to file for adjustment of status, and the Immigration Service is rejecting those applications. When they're submitted, they're submitted with all of the supporting evidence. There's over $1,000 of filing fee submitted to the Immigration Service, and the Immigration Service sends it back and says, we're not going to accept this application. But they're really not suggesting that they are not going to accept the application. They're just suggesting as to the timing of the filing. Well, that's the timing. If, in fact, they have what they've determined to be the appropriate visa approval, you can file and they'll go right for it. The only difference you have is that you have to wait for the visa approval in order to submit the application. There's nothing they're doing that says you can't submit an application, is there? Yes. They're saying you cannot. The timing is crucial, right? They're saying that you cannot file this application, we're not going to accept it at this time. Maybe somewhere down the road we'll accept it, but the problem is that there's a deadline involved, and after that deadline, it's a drop-dead deadline, because after that deadline passes, the person is no longer eligible for adjustment of status. Well, Mr. Powell, that may be the case or may not be the case, depending upon whether somebody waits until the last minute, or not. I mean, it may be an unfortunate consequence of timing. But where do you find timing as important in the statutory scheme? I don't see any congressional statement on timing at all in the statute. Okay. Yeah, let me address that question then about the timing under the statute. First of all, the statute as written provides that in order to qualify for adjustment of status, one of the first requirements is that the individual has to file an application. The only indication about what has to be the case in order to file the application is Congress's requirement that an immigrant visa must be, quote, immediately available. So I'm looking at Section 245A. Right. And what has to be the case at the time that the person files the application. The only thing that has to be the case when the person files the application is that an immigrant visa is immediately available at the time his application is filed. That's what Congress says about what needs to be the case when the application is filed. That's exactly the situation of the plaintiffs in this case. An immigrant visa is immediately available. And it's also the case with respect to every other category. The application cannot be accepted until a visa is immediately available. That's exactly right. Right? Yes. So that requirement exists across the board. Yes. That exists. So how can the regulation possibly be interpreted to call into question the meaning of immediately available visa? That's exactly the point. It does not, that regulation does not call into play this issue of immediately available. So you agree that the district court got that part of it wrong? No, the district court got that right. I see. Immediately available. The district court, well, I don't, I mean, maybe you didn't, maybe my question was badly put, but the district court seemed to say to me, paying no heed to the regulatory definition of immediately available, that the phrase in the statute could have two different meanings reasonably. But you couldn't apply two different meanings at the same time. And I'm suggesting that there are not any two different meanings. There's one meaning, and that's established. And I don't get how there could possibly be any other meaning. Okay. Maybe we read the district court's opinion a little bit differently. I take it that the district court said, first of all, that the statute is clear and unambiguous. And what immediately available means is only that there's an immigrant visa immediately available. It said, supposing, let's assume arguendo, that there's, that the statute is ambiguous. Then we get to your point, that it can be interpreted, used two different applications. But if I can follow, if I can say a little bit more about the meaning of this term, quote, immediately available, I think that's an important issue. I would point out, first of all, the government's 28J letter agrees with us now on the interpretation of the term immediately available. That has a fixed and unambiguous meaning. Immediately available means, and this goes back to 1950, our research shows that this goes back to 1952 when Congress initially enacted this provision. What immediately available means is that an immigrant visa is immediately available at the time that the application is filed. That's determined by looking at the visa bulletin. If I can point, and that's confirmed not only by history going back to 1952, but the current regulation in the immigration regulations, and I'm looking at 8 CFR, section 245.1, G1, specifically says that for people in the preference categories, the visa bulletin is to be consulted in determining whether the immigrant visa is, quote, immediately available. It's not determined on the basis of whether or not another petition has been approved. That is. But nobody's saying it is. I mean, the phrase immediately available has to do with the visa. Okay. That's just, I think everybody agrees that that's the case now, except for the district court. But where does that get you? Because that's true for everybody. It's true for everybody. That's right. It's true for everybody. Right. What that means is that the religious workers, just like the nonreligious workers, are statutorily eligible to file the application. And the problem is the Immigration Service says, well, for the nonreligious workers, you're statutorily eligible. We're going to accept your application. For the religious workers, the Immigration Service says, well, okay, you're statutorily eligible. You meet all of the qualifications, but we're not going to accept your application. What do you want them to do? Just take the application and sit it there in some file in the government? That wouldn't be as good as you keeping it. I mean, the bottom line is that we're really talking about the visas and as they approach that application. And all they're suggesting is that based on this language, or may be adjusted by the AG in his discretion under such regulations as he may prescribe, that they can determine when they get these applications that are allowed to be filed. That's all they're suggesting. That's not exactly correct, Your Honor. What the statute provides is that the Immigration Service can, when it adjudicates the merits of an application, can make that decision in their discretion and under the regulations that they adopt. But that's not to indicate that the Immigration Service has discretion to look at somebody who's statutorily eligible and say, well, we're not going to accept your application. That's exactly the point of this court's decision in Bona. The court actually says, and let me quote from the Bona decision, Congress did not delegate to the Attorney General the discretion to choose who's eligible to apply. But I don't see, again, I'm having a tough time determining why anything that we're arguing about here makes it such that you're not eligible to apply. The only thing that they say is when, always being eligible, you can put your application in. But the problem is that there's a deadline for filing the application, right? But that is not in this statute. That's the point. To me, that may be a very unfortunate consequence for some individuals who get caught in the ringer. But there's nothing, the statute is absolutely silent on stays or anything else. I mean, why does this statute have anything to do with an unfortunate consequence to any particular individual? The, so the statute does establish the deadline, not explicitly, but certainly by virtue of what's established. The deadline meaning what, Mr. Fall, just to be sure I understand you. So, in other words, if What deadline are you talking about? Okay. It's a deadline established in Section 245C. Yeah. Okay. What that says is that if you file an application when you're out of status, then you're not eligible for the adjustment of status. Right? In other words, so initially Yeah, I understand that. But we're talking about 245A and whether the regulation is ultra-virus 245A. Right. Aren't we? Yes, right. So what the statute, it establishes a deadline for filing. 245A does not establish anything. 245C. Yeah, I know. But the question is whether 245, the regulation is ultra-virus 245A. Right. Isn't it? It clearly is. Well, to Section 245, to Section 245. Okay. Got it. And the problem is if that deadline passes, then the person is eligible, and it's the Immigration Service that has the unilateral control over whether or not that deadline can be met. And the individual, you have the non-religious worker and the religious worker, both statutorily eligible, both filing the same applications, both paying the $1,000 filing fee, and the deadline is coming up. We can assume in both cases the individual has a visa that expires on July 31st. Both individuals file that application. The Immigration Service says, okay, fine, non-religious worker, we'll take your application. You can stay here beyond. You have filed the application before the deadline. You'll be eligible. For the religious worker, the Immigration Service says, no, we're not going to accept that until we get around to deciding this other application, and that's completely and unilaterally in their control. They can sit on that application. But the history is they do it within five months. That's not correct. Certainly not with respect to the plaintiffs. For example, the plaintiffs select Sedine as well as others. They file their applications more than a year and a half before their visas were set to expire, and they sit and they wait and they wait and they wait. They send in, they ask the Immigration Service to make a decision. They file the adjustment application, which gets refused, and they run up to that deadline, and then the Immigration Service is just going to say, tough luck, you've got to leave. In Sedine's case, their view is that he should leave and he would have to wait outside of the United States for more than a year before he's able to get the visa to come back into the United States. That's not permissible under the statute. Section 245A establishes who's statutorily eligible, and, again, what that means is that the immigrant visa has to be available at the time that the application is filed. So you're asking us to come up with a cure-all to cure your one client's problem? Well, it's not one. I mean, for example, the Presbyterian Church says that they have over 300 religious workers who are adversely affected by this regulation. It's throughout. The Catholic Church has many of their priests and other religious workers who are being forced to leave the United States because of this regulation. I guess I want to ask another. If, in fact, I buy your argument, how do I ever get to the idea that I go where the district court went? It seems to me that the district court falls into the same confusion and just wants to give another exception to the general rule, whereas if we take your argument as it is, that this is an unreasonable, arbitrary, capricious, manifestly contrary to this statute, why wouldn't I just throw out all of this kind of regulation? I mean, we are asking the court to affirm the decision by the district court, which we think was perfectly appropriate. All the district court said is that it's not appropriate when the religious worker tries to file the application. It's not appropriate for the Immigration Service to send that back and say, we're not going to accept it. Just treat the religious workers the same way that the non-religious workers are being treated. That's all the court, you know, that's all that we're asking and that's all the court said. The district court rewrote the regulation. So why wouldn't we simply invalidate? Is there any authority for doing anything more than invalidating a regulation and leaving it up to the agency in its discretion to draft what it wants to? Maybe it would go the opposite direction. Maybe it would eliminate concurrent filing for anybody. But, okay, theoretically, maybe so. But let me just point to the underlying history of this adjustment provision. First enacted in 1952 when Congress said that in order to file the application for adjustment of status, that an immigrant visa has to be immediately available. It uses that same language. In 1952, the Immigration Service adopted regulations implementing that statute, and it's 8 CFR section 245.12. Back in 1952, the issue of immediately available is determined solely by reference to the visa bulletin, solely by reference to whether or not a visa is available under the quota system. And furthermore, those regulations do not even require that the underlying immigrant visa petition be filed. It was adequate to submit evidence showing that you're working for the church or you're working for the business, the business is legitimate, and so on and so forth, the worker has the qualifications. There was no I-140 or I-360 petition to be approved. And one more point is that the Board of Immigration Appeals, in a precedent decision, adopts this interpretation, specifically says that the immediately available is determined on the basis of whether or not the visa is current under the visa bulletin. So that interpretation has been there since over 50 years. So you're saying that by just striking down this regulation, that would not cause the agency to have to make another interpretation of what they could do under the regulation, under the statute that might be worse than what we have here? Right. Are you saying that the law is in place to take care of that? All we're saying is that the religious workers should be treated the same way as the non-religious workers. That regulation that says that we're going to treat these people differently is not valid. It's ultra-virus to Section 245. I believe that where that's going to leave us is that these individuals will be treated the same way that they have been since 1952, which allows the application to be filed when the immigrant visa is immediately available. We're not asking for a whole reworking of the whole application process. Thank you very much for your argument. Thank you, Your Honor. We'll give you two minutes for rebuttal. Just a few brief points. First, the agency has broad discretion to implement the adjustment of status program. Okay, but not broad enough to go contrary to the statute. No, Your Honor, and that's not what's going on here. Whether or not religious workers can concurrently file, it's not a question of whether they be treated exactly like all others. The agency requires them to do an additional step before filing is not contrary to how other applicants are treated. For example, the L-1B visas, they don't have the extension that the H-1Bs have, and they're also required once their visas run out of time, if they haven't received a visa number, and they also have to leave. There are other employment categories that are also required to leave, like the ones that I mentioned. So it's not just religious workers who are in this position. And if this court is to find that the district court's determination was correct and the regulation is invalidated, the agency may very well be forced to eliminate concurrent filing and come up with an entirely new way of enforcing the statute, which, as I mentioned earlier, concurrent filing has been allowed since at least 1976. I haven't gone back further than that, but it's been going on for a long period of time. It hasn't been applicable to the same groups over time. It has changed in the agency's discretion to do that. Here there are serious concerns, and Congress has also voiced those serious concerns, about fraud in the application process. If the district court or this court were concerned about delays in that program, there is a mechanism available for an individual to challenge that delay. While there were delays at one point in time, the current processing times are five months, and those delays may very well be related to the concerns about fraud in the program. The agency has instituted a new way of assessing the validity of these applications, which includes site visits, and that did take a long time. And it has been improved, and the processing times have been improved to address that. The government asks that the court reverse. Thank you. Thank you very much. We appreciate the arguments. This is a very tough issue. We've tried to put our minds and hearts into it. We appreciate your arguments both sides today. This was an extremely difficult issue of really statutory interpretation. We appreciate that. Case 09-35734, Ruiz-Diaz v. United States of America is submitted. With that, our calendar for this morning is concluded, and we will be in adjournment until tomorrow. Thank you very much. All rise.
judges: Walter, Rymer, Smith N. R.